UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSEPH GRILLO, *pro se* : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 2020-CV-0417-JJM-PAS |
| : | (R.I. Superior Court C.A. PC-2020-5326) |
| ERIC LYNN ANDRIST, : | |
| : | |
| Defendant : | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO STAY DISCOVERY, DISMISS AND FOR DAMAGES AND ATTORNEY'S FEES**

Defendant Eric Lynn Andrist submits this Reply Memorandum in response to Plaintiff's Memorandum in Opposition ("Plaintiff's Memo", CM/ECF 11-1) and in further support of his Motion (CM/ECF 5) to stay discovery, dismiss the Complaint and award damages and attorney's fees. As argued in further detail below, Plaintiff's opposition essentially concedes most of the elements of liability under Rhode Island's anti-SLAPP statute (R.I.G.L. §9-33-2) other than "matter of public concern," and fails to persuade on that single remaining element. The remaining (extensive) argument in Plaintiff's papers is largely beside the point, except to demonstrate even further why this case provides a textbook example of a strategic lawsuit against public participation that attempts to suppress free speech on a matter of public concern.

I. <u>Areas of agreement</u>

Plaintiff's extensive presentation (19 page memorandum, two affidavits of length 12 and 19 pages, respectively and 18 exhibits) is more notable for its areas of agreement (or non-disagreement) with Defendant's Motion than for the points on which it disputes the Motion. More specifically, Plaintiff's papers either admit or do not dispute the following:

A. The Amended Complaint seeks relief due to harm that Plaintiff alleges Defendant caused by listing Plaintiff on the Bad Doctors Database and Patient Safety League website. *See* CM/ECF 1-1 ¶¶18, 65 (first), 63 (second), 89, 106.

B. The website posts in question consisted of the following:

(1) Media reports (both in print and video) of an incident in which Plaintiff smashed his vehicle into a liquor store window, attempted to reach in to remove a beer, and then drove away. *See* CM/ECF 5-2 (Andrist Affidavit) *and* CM/ECF 5-4, 5-7, 5-10 (screen shots of website).

(2) Links to official published Board of Medical Licensure decisions. *See* CM/ECF 5-4 (links to 2011, 2014 decisions), CM/ECF 5-7, 5-10 (links to Board of Medical Licensure decisions from 2011 and 2014, plus two from 2015).

(3) The 2011 decision (CM/ECF 5-5) was a summary suspension. It refers specifically to Plaintiff's 2011 arrest by Seekonk police on charges of operating under influence of alcohol, leaving the scene of an accident, breaking and entering and destruction of property. On that basis, the Board considered it an immediate danger to the public for him to continue practicing medicine.

(4) In the 2014 decision (CM/ECF 5-6), Plaintiff admitted that he pled guilty to a charge of driving under the influence and agreed to pay restitution. He admitted to violating RI General laws §5-37-5.1(5), *i.e.* that he engaged in unprofessional conduct that rendered him unfit to practice medicine in Rhode Island due to his dependence on controlled substances, as

        manifested in, among other things, in his pleading guilty to charges of driving under the influence when he crashed his vehicle into the Seekonk liquor store.

    (5)    In the March 11, 2015 decision (CM/ECF 5-8), Plaintiff agreed that he engaged in further unprofessional conduct ("Incompetent, negligent, or willful misconduct in the practice of medicine") and accepted a reprimand.

    (6)    In the October 13, 2015 decision (CM/ECF 5-9), Plaintiff voluntarily surrendered his license to practice medicine due to his failure to comply with his contract with the Physician Health Committee.

C.    In his First Affidavit submitted in this action (CM/ECF 10-2), pp. 1-3, Plaintiff reaffirms the accuracy of most of these materials. Plaintiff's principal grievance is that others will not consider him for a position because the website contains accurate descriptions of actions he took in the past (*Id.,* pp. 3-4). In Plaintiff's Memo (CM/ECF 11-1, p.16), Plaintiff states a second grievance, namely that the accurate information concerning his disciplinary record is part of a database containing information concerning disciplinary record of other physicians.

D.    Therefore, the Amended Complaint is targeted primarily at the suppression of a website that consists of a series of authentic, official Board of Medical Licensure decisions in which Plaintiff admits to unprofessional conduct, and to accurate media reports of an incident that was the basis of some of the Board's decisions to which Plaintiff pled guilty after being arrested.

E.    In other words, Plaintiff is suing Defendant for posting on a website a series of public documents and media reports whose content Plaintiff agrees is accurate.

II.   Disputes directly related to Defendant's anti-SLAPP Motion

Plaintiff's principal legal argument in support of his objection is to challenge whether the posted materials on the website comprise a matter of "public concern" as provided in R.I.G.L. §§9-33-2(a), 9-33-2(e). Defendant's communication with the Rhode Island Board of Medical Licensure (CM/ECF 5-13) fits within §9-33-2(e)'s category of "an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding" (namely the Board of Medical Licensure's review of Plaintiff's petition for reinstatement); therefore, the inquiry is limited to the (admittedly accurate) postings on the website.

With regard to the website's links to decisions of the Board of Medical Licensure, the Board's existence as a official governmental agency established by appropriate legislation *ipso facto* makes its decisions a matter of public concern. With that said, Rhode Island's Supreme Court, in *State v. Mylod*, 20 R.I. 632, 40 A. 753, 758 (1898) described the important public interest advanced by the State's medical licensing law as follows:

> The object of the statute in question is to secure the safety and protect the health of the public. It is based upon the assumption that to allow incompetent persons to determine the nature of disease, and to prescribe remedies therefor, would result in injury and loss of life. To protect the public, not from theories, but from the acts of incompetent persons, the legislature has prescribed the qualifications of those who may be entitled to perform the important duties of medical practitioners.

The other material on the website of which Plaintiff complains are links to published media reports regarding his uninvited visit inside a Seekonk liquor store. Because this incident provided the primary basis for the Board of Medical Licensure's 2011 decision (CM/ECF 5-5) and was a predicate for its 2014 decision (CM/ECF 5-6), the incident relates to Plaintiff's fitness to practice medicine, a matter of public concern. *See State v. Mylod, supra*; *see also, e.g. Carver v. Bonds*, 135 Cal.App.4th 328, 344, 37 Cal.Rptr.3d 480 (Cal.Ct.App. 1st Dist. 2005) (when

4

podiatrist brings defamation lawsuit against newspaper for podiatrist's failed treatments, anti-SLAPP judgment against podiatrist is affirmed because newspaper article is a matter of public concern as it provides information to assist patients in choosing doctors).

In opposition to the Motion, Plaintiff's Memorandum (CM/ECF 10-1, pp. 5-13) cites a grab bag of case decisions that (1) consider the term "public concern" in cases that do not involve claims under the anti-SLAPP law of Rhode Island or other jurisdictions, and (2) appear to take dictum out of context. For example, Plaintiff cites *Snyder v. Phelps*, 562 U.S. 443, 131 S.Ct. 1207 (2010), in which the United State Supreme Court held that a church group's picketing qualified a protected free speech against a defamation claim in which no SLAPP statute was involved and *Pickering v. Board of Education*, 391 U.S. 563 (1988) in which the Court upheld a teacher's First Amendment right to criticize a school board's budgetary decisions. Those case decisions, both of which support strong First Amendment rights, are perfectly consistent with the more relevant case decisions from Rhode Island courts applying R.I.G.L. §9-33-2 that are cited in Defendant's Memorandum. *See* CM/ECF 5-1, pp. 8-9.

Similarly, Plaintiff quotes out of context language from *City of San Diego v. John Roe*, 543 U.S. 77, 84, 125 S.Ct. 521 (2004), in which the Court held that a police officer's promotion and sale of videos depicting him engaging in sexually explicit acts did not qualify as free speech on a matter of public concern. In that opinion, the Court noted in passing that element in that test may be whether the matter was of public concern "at the time of publication." *Id*. In the case of the website at issue here, the media reports were published at the time the liquor store incident occurred, and were published on the website in 2014, when the incident was still germane to proceedings before the Board of Medical Licensure. While some (but apparently not all) news outlets accepted Plaintiff's request to remove the old reports from their online archives (*see*

5

Plaintiff's Memo, CM/ECF 10-1, p. 9), they did so as a matter of accommodation, rather than as a matter of legal obligation. To the extent that Plaintiff believes that potential employers, clients or patients act unfairly when they judge him by his past actions, his complaint lies with them, rather than with an accurate portrayal of Plaintiff's past.

The arguments in Plaintiff's Memo (CM/ECF 11-1, pp. 12-14) that assassinate Defendant's character to raise questions about his motives (in ways that Defendant disputes) are also beside the point, because while the First Amendment might allow Plaintiff the right (within certain limits) to malign Defendant in a court pleading, Plaintiff's right to this particular type of free speech does not provide the Court a basis to curtail Defendant's right to free speech.

Because the content of the website relating to Plaintiff is not a "sham" (actually Plaintiff admits it is accurate), and because it relates to a matter of public concern as defined by the statute, the Court has enough material on which to grant the Motion without reviewing Plaintiff's extensive other materials.

III.  Other issues

Plaintiff's Objection raises other issues that are not germane to Motion before the Court, but further underscore this lawsuit's strategic purpose to suppress protected speech.

    A.  The "publication" of Plaintiff's retaliatory website (CM/ECF 11-1, pp. 2-5)

Plaintiff argues (CM/ECF 11-1, pp. 2-5) that the retaliatory website he "presented" to Defendant should be discounted because it was not formally "published". This distinction has no relevance to the issues before the Court. Defendant is not suing Plaintiff for defamation. Defendant brought the website to the Court's attention because of the threats it conveyed and its repeated resort to slurs on Defendant's character, including what could reasonably be interpreted

6

as homophobic "dog whistles." While Plaintiff asserts in his Affidavit that the whole effort was mere "puffery", he did not say this to Defendant at the time; instead, he sent Defendant an accompanying email that attached sample court complaints along with the following warning:

> Before filing suit, I am offering you an "out" as a courtesy. As you might know, I am a physician and about to graduate law school. As you know, my efforts at employment in law have been significantly limited because of my presence on your website.   . . .
>
> Although you may feel that my campaign is hurtful, it is one that I must pursue. I'm not given much by way of choice. For both of our sake, I urge you to contemplate what I present to you.   . . .
>
> I am giving you a very clear choice with a very clear bright line. Take my name down, and nothing that I describe or show you will come to fruition.   . . .   If you take down my name, I will not proceed any further. At this point, I have purposely not disclosed your name or identifying information to other physicians on your site.
>
> You might want to take a look at the complaint that will be filed in Rhode Island first. Your first inquiry is whether you will be required to appear in RI. The answer is that if my complaint is thorough, you and/or your lawyer will be compelled.
>
> Whether you prevail in RI, there will be additional suits with other complainants. You will be required to defend over various jurisdictions.   . . .
>
> You should be aware that I've been preparing for this for the past 2½ years and am prepared to move forward – and I assure you that you do not fully realize what will be coming your way.   . . .
>
> Once this process begins, there will be no going back. There will be commitments made to others that I will be required to follow up. Even so, once the process begins, you name and biography will be exposed. To give you an idea I've attached a web page that my programmer informs me will overlay on your Tumblr site. I'm not sure how that will work – but I'm fairly certain that it will occur. What I'm revealing to you is an old version – the updated page(s) are revised and contain significantly more information.
>
> I can tell you that others are more than willing to contribute funding. I will soon be able to represent them if they choose. I can raise sufficient funds to drive this campaign indefinitely. Physicians are willing to spend a lot more money on efforts and strategies that have been less effective.
>
> I've provided you a few of the complaints that I've drafted and are ready to be filed. Once the process begins, the same or similar lawsuit will appear in different jurisdictions in different states.   . . .

7

>You should realize that an attaining a court order to remove names or shut down your sight is primary goal, but not the only potential outcome. There is the potential for damages as well – and they could be significant – and occur above and beyond the legal fees that you will incur while attempting to defend these suits.[1]
>
>I can inform you also that we have in the works the plan to conduct a deliberate marketing campaign that will be relentless.  . . .
>
>For now, I'm providing you with a few indicia of reliability including two complaints. I've authored a fairly extensive number of complaints. Of course, the first will be filed in Rhode Island. California will come at some point thereafter, if necessary. There are others that I will not reveal until they are filed.
>
>Understand this – if I must do this, I will take it to the end.   . . .

CM/ECF 12-2.

Plaintiff's email states in his own words the plan described in the "puffery" of the retaliatory website, namely to sue Defendant multiple times anywhere and everywhere possible, continuing the fight in other jurisdictions should he lose in Rhode Island, in a war of attrition with the ultimate goal of suppressing the website's accurate references to Plaintiff's past history.

    B.    <u>Plaintiff's other claims (Plaintiff's Memo, CM/ECF 11-1, pp. 14-17)</u>

The final section of Plaintiff's Memorandum (CM/ECF 11-1, pp. 14-17) and Plaintiff's Second Affidavit (CM/ECF 11-3) present an assortment of other issues related to "the merits of America's [Defendant's?] anti-SLAPP affirmative defense" that are not germane to the pending Motion, but Defendant reviews them briefly.

        1.    <u>Other "defamatory messages" (Plaintiff's Memo, CM/ECF 11-1, p. 15)</u>

Plaintiff alleges harm from Defendant's statements to the press and to law enforcement. As described in the Second Affidavit of Eric Andrist attached (CM/ECF 12-1), these contacts

---

[1] Defendant lacks funds to litigate this matter; instead he sought *pro bono* counsel to represent him. *See* CM/ECF 12-8, p.2. This writer was contacted about this case by the Rhode Island Bar Association and is representing Defendant *pro bono*.

8

(CM/ECF 12-3 – CM/ECF 12-8) were based upon the information contained in the protected free speech of Defendant's website and/or the threats and homophobic content of Plaintiff's retaliatory website. The entire content is accurate and, in any event, did not result in any media reports or official action.

        2.    Plaintiff's attack on the Patient Safety League (CM/ECF 11-3)

Plaintiff's Second Affidavit (CM/ECF 11-3) mounts an attack on the non-profit Patient Safety League. While much of this content is objectionable, the simple facts are that the Patient Safety League is not a party to this action, this Court probably lacks jurisdiction over it (*see* CM/ECF 5-1, p.4, n.1, citing *Narcisi v. Turtleboy Digital Marketing LLC*, C.A. 2019-CV-0329 (Memorandum and Order, September 3, 2020)) and, in any event, the League's activities that involve doctors other than Plaintiff are not relevant to the matters before this Honorable Court. Plaintiff can try to sue the Patient Safety League in California regarding its activities that involve him personally (subject to California's anti-SLAPP statute), and/or he can petition the California authorities to revoke the organization's charter. To the extent that Plaintiff seeks to shut down the entire Patient Safety League website because he objects to its exercise of free speech in connection with its accurate portrayals of his conduct, Plaintiff once again runs afoul of the policies that led to the enactment of Rhode Island's anti-SLAPP statute. *See also* CM/ECF 13-1 (Defendant's Memorandum in Support of Objection to Motion for Preliminary Injunction).

IV.    Conclusion

Not all grievances (no matter how deeply held) qualify as legitimate bases for a lawsuit, never mind a coordinated multi-jurisdictional litigation campaign directed at a single person. Plaintiff's communications with Defendant express a detailed plan to launch an armada of

9

lawsuits as leverage to force the suppression of accurate, First Amendment protected speech. It is difficult to conceive of a more egregious example of why Rhode Island, along with most other states, enacted the anti-SLAPP law. For these reasons, Defendant moves the Court to provide full and appropriate relief under R.I.G.L. ¶9-33-2.

                                                              Respectfully submitted,

                                                              Defendant Eric Lynn Andrist

                                                              By his attorney,

                                                              /s/ Samuel D. Zurier
                                                              Samuel D. Zurier (#3576)
                                                              55 Dorrance Street, Suite 400
                                                              Providence, Rhode Island 02903
                                                              (401) 861-0200; (401) 861-2922 (fax)
                                                              sdz@zurierlaw.com

October 27, 2020

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of October, 2020, I served a copy of this Reply Memorandum in Further Support of Motion to Stay Discovery, Dismiss and for Damages and Attorney's Fees through the Court's CM/ECF system and by first class mail, postage prepaid, upon Plaintiff at the following address:

      Joseph Grillo
      73 Primrose Hill Road
      Barrington, RI 02806

      /s/ Samuel D. Zurier

U:\Andrist\Drafts\Andrist Reply Memo 10-24.wpd