UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEPH GRILLO, *pro se* | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 2020-CV-0417-JJM-PAS |
| | : | (R.I. Superior Court C.A. PC-2020-5326) |
| ERIC LYNN ANDRIST, | : | |
| | : | |
| Defendant | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION**

Defendant Eric Lynn Andrist submits this Memorandum in support of his objection to Plaintiff's Motion for Preliminary Injunction (CM/ECF 11). As argued in further detail below, the Court should deny the Motion because (1) Plaintiff is not likely to succeed on the merits, (2) the balance of harms weighs in favor denying the Motion and (3) the requested relief disturbs the status quo.

I.  Legal standard

To successfully obtain a preliminary injunction, a plaintiff must establish

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.

*NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (citation omitted).[1] Of these four criteria, "[t]he likelihood of success on the merits is the critical factor." *American Trucking Assoc. v. Alviti*, C.A. 18-378-WES (Sept. 10, 2020) (slip op., p.6) (quoting *Schofield v. Clark*, 686 F.Supp. 2d 124, 126 (D.Mass. 2010) (citation omitted)).

---

[1]  Plaintiff's Memorandum (CM/ECF 11-1), p. 11 states the Rhode Island state law standard for a preliminary injunction, which does not apply here.

Also,

> The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits can be held; it protects the "last uncontested status which preceded the pending controversy."

*Cohen v. Brown Univ.*, 809 F.Supp. 978, 999 (D.R.I. 1992). *See generally American Trucking Assoc. v. Aliviti*, C.A. No. 18-378 (D.R.I. Sept. 10, 2020) (slip op.) p. 5.

II.  Argument

   A.  Plaintiff is not likely to succeed on the merits.

The Amended Complaint contains five counts with asserted legal bases for relief. A review of each them reveals that none are likely to succeed on the merits.

   1.  Count I: Intentional Infliction of Emotional Distress

Following the Restatement of Torts, Rhode Island courts set a high bar for a claim of intentional infliction of emotional distress, describe the standard this way:

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Restatement (Second) Torts, § 46 cmt. d, at 73 (Emphasis added.)

*Swerdlick v. Koch*, 721 A.2d 849, 863 (R.I. 1998); *see also Gross v. Pare*, 185 A.3d 1242 (R.I. 2018) (upholding directed verdict on intentional infliction of emotional distress claim.)

The Amended Complaint identifies the following statements and/or communications that comprise the alleged intentional infliction of emotional distress:

2

1. The entries referring to Plaintiff on the online doctor database (¶45);

2. Plaintiff's complaints to Board of Medical Licensure (¶¶53, 57)

3. Communications with the Providence Journal (¶54)

4. Communications to the FBI (¶55)

With regard to the online doctor database, Defendant argues in his Motion to Stay (*see* CM/ECF 5-1, pp. 7-10) the website engages in First Amendment protected speech that makes this claim subject to dismissal under R.I.G.L. §9-33-2. *See also* CM/ECF 12-1 (reply memorandum). Also, Plaintiff has conceded that the contents are accurate. *See* CM/ECF 12-1, pp. 1-3.

Defendant's complaint to the Board of Medical Licensure is also privileged pursuant to R.I.G.L. §9-33-2. *See* CM/ECF 5-1, p.10.

Defendant's communications with the Providence Journal are reproduced at CM/ECF 12-3, 12-4. They do not come close to the *Swerdlick* (or Restatement) standard of outrageous conduct. Nor do Defendant's communication with the FBI. *See* CM/ECF 12-2, ¶¶16-17.

2. Count II: Intentional Interference With Prospective Advantage

In Count II, Plaintiff seeks relief based on a claim that his business prospects have been damaged by the posting on the Patient Safety League website. As noted before, (*see* p. 3, *supra*), the material on the website is protected First Amendment speech, and Plaintiff has admitted (or at least does not dispute) the accuracy of its contents. As a result, the contents are privileged from this claim. Alternatively, the contents are not "improper;" therefore, Plaintiff's claim fails on this basis as well. *See, e.g., Avilla v. Newport Grand Jai Alai*, 935 A.2d 91, 98 (R.I. 2007) (discussing element of "improper" interference).

3

3. Count III: Invasion Of Privacy Based On False Light

Count III of the Amended Complaint seeks relief under R.I.G.L. §9-1-28.1(a)(4) based on an allegation that the references to Plaintiff in the website's doctor database place him in a false light.

In *Swerdlick v. Koch, supra*, 721 A.2d 849, 861-62 (R.I. 1998), the Rhode Island Supreme Court described the elements of this claim as follows:

> To recover under this section, plaintiffs must establish that "[t]here has been some publication of a false or fictitious fact which implies an association which does not exist; [and] [t]he association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances ." Section 9-1-28.1(a)(4)(i)(A)(B). Unlike defamation, a false-light action requires that a plaintiff be "given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Restatement (Second) Torts, § 652E cmt. b, at 395. Further, a plaintiff states a cause of action for invasion of privacy when "there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Id. cmt. c, at 396.

This Count also suffers from the same two fatal flaws as its predecessors. First, everything on the website is factual and accurate by Plaintiff's own admission and/or non-objection. Second, the website is protected speech as provided in R.I.G.L. §9-33-2.

4. Count IV: Defamation

Once again, the references to Plaintiff on the Patient Safety League website are factual and accurate, eliminating this claim. Also, the website's contents are protected First Amendment speech that is privileged under R.I.G.L. §9-33-2.

5. Count V: Americans With Disabilities Act

In Count V of the Complaint, Plaintiff alleges that the Patient Safety League website is a "place of public accommodation" subject to regulation under Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181 *et seq*. This makes no sense. A website is not a "place,"

never mind a "place of public accommodation." Also, it is impossible to shoehorn a website into the definitions of "public accommodation" set forth in the statute.

At 42 U.S.C. §12181(7), the statute defines "public accommodation" this way:

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-

(A)  an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B)  a restaurant, bar, or other establishment serving food or drink;

(C)  a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D)  an auditorium, convention center, lecture hall, or other place of public gathering;

(E)  a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F)  a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G)  a terminal, depot, or other station used for specified public transportation;

(H)  a museum, library, gallery, or other place of public display or collection;

(I)  a park, zoo, amusement park, or other place of recreation;

(J)  a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K)  a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L)  a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

While it is not entirely clear, it appears Plaintiff is claiming that the website qualifies as a "place of public accommodation" under 42 U.S.C. §12181(7)(J), which applies to:

> (J)   a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

The Amended Complaint, §78 appears to contend that the website is an "other place of education" because the Patient Safety League has the mission to "educate the public about medical errors and harm and how to remain safe as a patient." Defendant has not found a case decision that has addressed this argument, but an interpretation that a website is an "other place of education" would be inconsistent with the specific list of education institutions that precedes it in the section of the statute. Also, such a reading would drastically expand the scope of the Americans with Disabilities Act to authorize prior restraints across the entire field of published speech, contrary to the free speech values enshrined in the First Amendment to the Constitution.[2]

Defendant respectfully submits the Amended Complaint's proposed interpretation of the Americans with Disabilities Act is, to use a technical legal term, kooky.

### 6.   The Patient Safety League

Plaintiff's Memo in support of the Motion for Preliminary Injunction (CM/ECF 11-1, pp. 2-10), as supported by Plaintiff's Second Affidavit (CM/ECF 11-3), argues that the Court should issue a preliminary injunction to shut down the website because the Patient Safety League is an illegal organization and because Plaintiff believes that Defendant is a bad person. While much of

---

[2] For example, Plaintiff's interpretation of "public accommodations" could be extended to provide courts with authority to issue prior restraints of theatrical productions. The French playwright Moliere famously stated that his goal in writing satires was "plaire et instruire" (or to entertain and instruct) which, under Plaintiff's reasoning would make every one of Moliere's plays an educational entity which qualifies as a "public accommodation" subject to the regulation of the Americans with Disabilities Act.

6

this content is objectionable, the simple facts are that the Patient Safety League is not a party to this action, this Court probably lacks jurisdiction over it (*see* CM/ECF 5-1, p.4, n.1, citing *Narcisi v. Turtleboy Digital Marketing LLC*, C.A. 2019-CV-0329 (Memorandum and Order, September 3, 2020)) and, in any event, the League's activities that involve doctors other than Plaintiff are not relevant to the matters before this Honorable Court. Plaintiff can try to sue the Patient Safety League in California regarding its activities that involve him personally (subject to California's anti-SLAPP statute), and/or he can petition the California authorities to revoke the organization's charter.

> C. Plaintiff's claimed harm in the absence of preliminary injunctive relief, is matched or exceeded by the irreparable harm Defendant will suffer if preliminary injunctive relief is granted.

Plaintiff's claim is based primarily on the financial harm he claims to suffer as a result of information posted on the website. This can be compensated with money damages. In contrast, if the requested preliminary injunction is granted, Defendant will suffer irreparable harm in the form of denial of a Constitutional right of free speech. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (noting that the "loss of First Amendment freedoms ... unquestionably constitutes irreparable injury").

> D. The requested preliminary injunctive relief is not in the public interest.

Rhode Island's anti-SLAPP statute, R.I.G.L. §§9-33-1, states this public policy:

> The legislature finds and declares that full participation by persons and organizations and robust discussion of issues of public concern before the legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process, that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances; that such litigation is disfavored and should be resolved quickly with minimum cost to citizens who have participated in matters of public concern.

An Order from this Honorable Court denying the Motion for Preliminary Injunction would advance the public interest by supporting the policy of Rhode Island's anti-SLAPP statute and defending the right to free speech.

> E. The requested relief would disturb the status quo, effectively deciding the case in chief without a trial.

The content on the website that refers to Plaintiff was first posted in 2014. That is the status quo. Plaintiff brought this lawsuit to change that status quo; therefore, therefore, the Motion's proposal to decide the case in chief through a preliminary injunction is not an appropriate use of Fed.R.Civ.P. 65(a).

III. Conclusion

A review of the Motion for Preliminary Injunction and supporting papers confirms that this lawsuit is all about suppressing protected speech in violation of the First Amendment and R.I.G.L. §9-33-2. Also, a detailed review of the specific legal theories expressed in the Amended Complaint confirms this lawsuit as a whole is highly unlikely to succeed on the merits, independent of Rhode Island's anti-SLAPP statute. For these reasons, the Court should deny the Motion for Preliminary Injunction and move forward with Defendant's Motion to Stay, Dismiss and Award Damages and Attorney's Fees.

                                  Respectfully submitted,

                                  Defendant Eric Lynn Andrist

                                  By his attorney,

                                  /s/ Samuel D. Zurier
                                  Samuel D. Zurier (#3576)
                                  55 Dorrance Street, Suite 400
                                  Providence, Rhode Island 02903
                                  (401) 861-0200; (401) 861-2922 (fax)
October 27, 2020                  sdz@zurierlaw.com


## CERTIFICATE OF SERVICE

       I hereby certify that on this 27th day of October, 2020, I served a copy of this Memorandum in Support of Objection to Motion for Preliminary Injunction through the Court's CM/ECF system and by first class mail, postage prepaid, upon Plaintiff at the following address:

       Joseph Grillo
       73 Primrose Hill Road
       Barrington, RI 02806

       /s/ Samuel D. Zurier

U:\Andrist\Drafts\Memo ISO Objection to Motion for P I.wpd