# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

JOSEPH GRILLO, *pro se*

Plaintiff

v.

ERIC LYNN ANDRIST,

Defendant

C.A. No. 2020-CV-0417-JJM-PAS
(R.I. Superior Court C.A. PC-2020-5326)

### SURREPLY TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY, DISMISS, AND FOR DAMAGES AND ATTORNEY'S FEES

In light of defense's recent array of documents (i.e. Reply Memorandum in Support of Motion to Stay Discovery, Dismiss and for Damages and Attorney's Fees; and Memorandum in Support of Opposition to Preliminary Injunction) – the Plaintiff provides the following clarifications.

The conclusions reached are (a) the Defendant's anti-SLAPP claim could be denied based on the "illegality exception;" (b) the claim should be denied based on the RI Supreme Court's Balancing Test; (c) the speech in question is clearly no longer a matter of public concern; and (d) the "sham exception" should be applied to this case.

    I.    <u>Rhode Island's Anti–SLAPP Statute should not apply to speech that is illegal as a matter of law.</u>

1

The Plaintiff has previously put forth his argument that the Defendant is operating an illegal organization. (For a full discussion *See* Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, p.1-10). The Defendant's organization (from where he proffers his speech) operates in violates the law. This is both relevant and important. (For a full discussion *See* Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, p.1-10).

This Court may consider applying: (a) the "illegality exception" to the Defendant's anti-SLAPP claim (discussed *infra*), and/or (b) the Rhode Island Supreme Court "Balancing Test" (discussed *infra*). In either case, this Court may conclude that the Defendant should not be afforded anti-SLAPP protection.

So far, California is one state that has recognized that anti-SLAPP should not protect the Defendant when underlying conduct is illegal as a matter of law (termed "the illegality exception").

The landmark case on the illegality exception is *Flatley*. In *Flatley v. Mauro*,[1] an entertainer brought a lawsuit against an attorney alleging extortion and other claims. The attorney filed a motion to strike the complaint under California's anti-SLAPP statute. The court ruled that the defendant was precluded from using anti-SLAPP because his underlying activity was illegal. The Court further ruled that illegal activity that would otherwise be privileged had it not been for the illegality was not protected by the anti-SLAPP statute.

In a second case, *Novartis v. Stop Huntingdon Life Sciences*,[2] the defendant engaged in a campaign whereby it terrorized plaintiff employees by such acts as breaking windows and

---

[1] 39 Cal. 4th 299, 314–15, 139 P.3d 2, 11 (2006); *See also* Flatley v. Mauro, 39 Cal. 4th 299, 316, 46 Cal. Rptr. 3d 606, 139 P.3d 2 (2006); *Cross v. Cooper*, 197 Cal. App. 4th 357, 383–391, 127 Cal. Rptr. 3d 903 (6th Dist. 2011).) Collier v. Harris, 240 Cal. App. 4th 41, 192 Cal. Rptr. 3d 31 (4th Dist. 2015).
[2] *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 50 Cal. Rptr. 3d 27, 34-36 (Ct. App. 2006).

2

vandalizing cars.[3] The defendant attempted an anti-SLAPP affirmative defense, claiming that their acts were somehow protected speech. The court ruled for the Plaintiff in denying an anti-SLAPP defense, citing the illegality exception.[4]

To this author's knowledge, the First Circuit has not yet had a case come up for decision where the "illegality exception" could apply. On the other hand, this law makes sense. Why should a defendant be offered the protections of the law when the subject matter of the case involves illegal behavior. Whether or not this Court views this exception as better left to the Legislature than the Judiciary is a matter left to this Court's discretion.

Next, the Supreme Court of Rhode Island has applied a "balancing test" when it comes to anti-SLAPP litigation.

> By the nature of their subject matter, anti-SLAPP statutes …. On the one hand, it is desirable to seek to shield citizens from improper intimidation when exercising their constitutional right to be heard with respect to issues of public concern. On the other hand, it is important that such statutes be limited in scope lest the constitutional right of access to the courts (whether by private figures, public figures, or public officials) be improperly thwarted. There is a genuine double-edged challenge to those who legislate in this area.[5]

A. The "Illegality Exception" could apply to this case

Intuitively, one would expect that illegal activities should not be afforded protection. Contrary to the Defense's assertions, it cannot be said that The Patient Safety League is separate from the Plaintiff himself. Here we are scrutinizing the Defendant's behaviors. His behaviors play out ubiquitously across various social media platforms and websites. His speech flows seamlessly between platforms. Frequently the same speech is posted in multiple locations. His "Bad Doctor Database" was originally hosted on multiple social media platforms but were all

---

[3] *Id.* at 29.
[4] *Id.*
[5] *Palazzo v. Alves*, 944 A.2d 144, 150 (R.I. 2008)

taken down.  Only then did he move his activities to his Patient Safety League site, a grass-roots stand-alone site. The defense is claiming that The Patient Safety League should be excluded from this case, when this site is now his primary platform.

The defense is taking refuge in advancing the notion that he is somehow separate from the Patient Safety League - when it is just another of his many aliases. The Patient Safety League is nothing more than another of his multitude of sandboxes – it is his "front" for illegal activities. He cannot be permitted to hide behind the corporate veil that he has created and operates illegally.

His organization operates illegally. The Defendant is fully aware of this. He is not operating just slightly outside the mandate for a charitable organization – he so far outside that it could not conceivably be recognized as a 501(c)(3) charitable organization. The Defendant uses this platform to participate in activities that are prohibited. Whichever platform he uses, the evidence demonstrates a spewing of hatred and frequent defamatory statements – all occurring as a normal course of business. Here he conveniently attempts to claim that one of his platforms is exempt from the jurisdiction of this Court.

The illegality at issue is just one example of a pattern of pathological behaviors on the part of the Defendant. His behaviors are relevant to this case. The Defendant has claimed that he can do anything that he wants. He acts as though the law and rules don't apply to him. For example, EACH AND EVERY DOCUMENT THAT HAS BEEN SUBMITTED TO THIS COURT BY THE DEFENDANT CONTAINS OVERT, PURPOSEFUL MISINFORMATION (*see for example* Third Affidavit of Plaintiff Joseph Grillo, MD, p. 4-6).

4

For these reasons, the Defendant should not be afforded protections of the law when he is breaking the law on a daily basis. He should not prevail when he is creating a false narrative with overt misinformation.

B.  The Rhode Island Supreme Court "Balancing Test" should apply to this case

In the alternative, application of the RI Supreme Court's "Balancing Test" would likely yield the same result. For all the reasons stated here and elsewhere, the Defendant should not be permitted the sanctuary of the statute. The Plaintiff is a private party, not interested in quelling the Defendant's free speech rights, he only wants his name removed. His is one of thousands. His rational is valid. Defense counsel seems annoyed at having to review lengthy submissions by this Plaintiff. The reality is that this case would exist had the Defendant simply showed the slightest compassion.

II.   Areas of Agreement
      (*See* Defendant's Reply Memorandum in Support of Motion to Stay, Section I)

The defense posits that both sides are in agreement that the posts on The Patient Safety League website are accurate reproductions of media reports and the like. This is true.

What the defense has left out is that the website (and indeed all the Defendant's present and previous sites and blogs) miraculously change to suit his present-day needs. Information on his website yesterday is not the same as today. Information is frequently changed. For example, the Defendant previously posted that the Plaintiff was a "repeat criminal." Somehow, that particular post disappeared. More ominous is the fact that once this case is over, the Defendant will continue posting whatever he wants and wherever he wants. It is absolutely of no comfort that today the information on his site is accurate.

III. Disputes related to anti-SLAPP motion
(*See* Defendant's Reply Memorandum in Support of Motion to Stay, Section II)

Next, the defense challenges the Plaintiff's grounds for opposing his anti-SLAPP motion (page 4, part II). He claims in part that the Defendant's communication with the Rhode Island Medical Board fits with §9-33-2(e) as "an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding." This is not true.

While the Defendant wrote multiple scathing letters with inaccuracies, both before and after the Plaintiff was licensed, these letters were summarily disposed of without even the slightest consideration. These complaints are known to the Plaintiff only because (a) the Defendant told him so, and (b) the Plaintiff made inquiry to the Chief Administrator (James McDonald, MD). His complaints never arose to the level of an issue under consideration. Any questions whatsoever on this matter can be addressed by this Court directly if it sees fit. The Plaintiff gives permission for this Court to communicate directly with Dr. James McDonald.

A. Dispute over "matter of public concern"

The defense next cuts into the Plaintiff's contention that the subject matter is no longer a matter of public concern. The Defense accuses the Plaintiff of relying on a "grab bag" of cases that didn't apply to anti-SLAPP. That is an unnecessary and inaccurate characterization.

i. The disagreement: the defense's anti-SLAPP argument is premised, in part, on the speech in question being a matter of public concern. The Plaintiff has argued in the alternative – that the speech is no longer a matter of public concern.

ii. Plaintiff's rationale: In developing this argument, the Plaintiff's first task was to identify controlling case law that defines "a matter of public concern."

iii. As discussed, there are only a few Supreme Court cases that speak to this issue.

6

iv. In short, *Synder v. Phelps*,[6] is the controlling case on this issue. The case provides two disjunctive elements and mandatory factors that are to be used to define "a matter of public concern."

v. This same definition has been applied to a myriad of different cases across the board. It is relevant and controlling law today. *It applies to this case*. The Plaintiff was not confused when discussing this case.

vi. Next, the Plaintiff presents Chief Justice Robert's affirmation that "a matter of public concern" is a function of newsworthiness.[7] There is adequate case law to support this.

vii. Further, it follows that if all news agencies who (a) ran the Plaintiff's story; (b) eventually removed the story – this Court might believe the Plaintiff's assertion – that an event from tens years ago is moot and no longer newsworthy nor are they any longer a matter of public concern.

viii. The defense asserts that these agencies were compliant only "as a matter of accommodation." The Plaintiff disagrees. News agencies have not been found to be necessarily charitable. If the incident had value as to continued public awareness, it would not have been taken down.

ix. Even though the defense is critical the Plaintiff's reference to *Pickering v. Board of Education*,[8] this case was selected to point out to this Court that in cases such as the instant one, as part of their calculus, Courts have favored application of this balancing test to help them in making a determination about whether speech is protected. It is

---

[6] 562 U.S. 443, 131 (2010).
[7] *Id.*
[8] 391 U.S. 562 (1988).

        reasonable to suggest that this Court to do the same – to consider the various interests and to balance them.

x.     If this Court concludes that the speech at issue is no longer a matter of public concern, then the Defendant is precluded from anti-SLAPP protection.

B.  Plaintiff is "assassinating" Defendant's character

i.     The defense suggests that Plaintiff is "assassinating Defendant's character." The is not true. The Defendant's character stands on its own merit. The evidence speaks to his character. His actions prove his character.

ii.     The Defendant has lied and misinformed on occasions too numerous to count. The Defendant attacks and defames many within his sphere.

iii.     Even though the defense states otherwise, character and emotional framework are relevant to this case. Not everyone operates a charitable organization illegally. Not everyone gets into fistfights with delivery personnel. Seldom does medical negligence occur in the setting of an entire family. Seldom does anyone go to such extreme measures as to destroy another person – by crafting compliant letters with misinformation. Seldom does a person disparage virtually every professional that he has dealt with. The list goes on ad infinitum.

iv.     This Court expects candor and honesty. For this reason alone, these issues are relevant. Also, the Court, in its discretion, may apply the "illegality exception" which is informed by the Defendant's behaviors.

v.     The Defendant's behaviors speak for themselves. The evidence is abundant. The inferences and conclusions are well within reason. Overall, the propensity to misinform; to knowingly operate outside of the law; to step into a position of

authority and make cruel and outrageous claims; to defame an elderly stroke victim and accuse him of being drunk, to openly admit that one has an axe to grind – all of this informs the Court. This Court has to decide whether to offer the Defendant certain privileges and protections. This is no joke. The outcome is critically important to the Plaintiff and others. Indeed, a ruling in favor of this Defendant provides him with absolute free reign to continue to harm others.

IV. Sham exception

The sham exception applies to this case. Even if all other requirements were met (which they are not), the Defendant should be denied an anti-SLAPP affirmative defense, because his activities amount to being a sham.

The sham exception precludes speech from anti-SLAPP protections – meaning the speech is "not genuinely aimed at procuring favorable government action, result, or outcome, regardless of ultimate motive or purpose."[9]

Further, it must be determined whether the statements were "(1) [o]bjectively baseless in the sense that no reasonable person exercising the right of speech * * * could realistically expect success in procuring the government action, result, or outcome, and (2) [s]ubjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects."[10]

A. <u>Objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring the government action, result, or outcome.</u>

---

[9] *Sisto v. Am. Condo. Ass'n, Inc.,* 68 A.3d 603, 615 (R.I. 2013)
[10] R.I. Gen. Laws Ann. § 9-33-2 (West)

First, it is taken on its face that The Patient Safety League and the Defendant are one in the same and cannot be distinguished from each other – that one is but an alias for the other.

Next, the sought-after objective - the "government action, result or outcome" that the Defendant seeks in re-publishing the names of suspect physicians is not necessarily clear. In fact, there are no definitive "government actions, result or outcomes" that can be identified – because the defendant himself has never stated any. Here, the measured outcome should somehow be aligned with patients and their safety. Hence, the advancement of patient safety is the presumed outcome.

In fact, the posting of physician names is not about safety because the Defendant posts only information on physicians who have come under fire. By itself, this information is empty. It accomplishes nothing. It does serve to harm the named physician and the patients who would have considered him as a provider. There is seldom any context or follow up. Very often, physicians are harmed – and according to the Defendant – it doesn't matter whether they were found innocent or their case was dropped altogether. Instead, the Defendant's summarily dismisses the legal system as being flawed (*see* Exhibit Q). When a physician is found innocent, the Defendant refuses to take his name down because "they gave up trying to prove him guilty "(*id*). Independent of any legal outcome, the physician remains in the database, almost always without any sort of due process. In other words, once the Defendant grabs hold of a physician, he is permanently blemished – independent of actual events. Overall, this creates a false narrative and wrong impression. The net effect is that patients are likely to forego using that physician – even though he may be the best physician for the patient and her illness. In smaller communities, for example, this may eliminate the best available physician period – even though he did nothing wrong and can provide competent care. In short, listing of physician names in a database – by

itself – is mere window dressing for the Defendant. It does not coincide with patient safety whatsoever. Ultimately patient safety is a function of receiving competent and caring care. The facts and evidence clearly show that the Defendant could care less about patients and their safety and more about being vindictive and harmful. Objectively speaking, this practice serves to harm physicians but not help patients.

> B. Subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects."

This particular topic has been discussed at length (*see in general* Plaintiff's Affidavit II). The Defendant has garnered a degree of notoriety for his efforts. The evidence is clear – there is nothing about the Defendant, his organization or his activities that have anything to do with patient safety or public welfare. The evidence shows that the Defendant is in it for his personal reasons. He enters physician names and will never consider removing one – no matter what. *He uses this collection of names for branding and marketing purposes*. He has zero interest in being fair or equitable. He holds on to each and every name because it would not serve him to be fair and balanced. The more names that he collects, the higher position he occupies in a Google search – the more fame he realizes. Per the evidence, there is no doubt – he is using the process for his own personal gains – period.

Here, the circumstances make clear that the Defendant cunning and clever – he has "weaponized" the process. His activities are "not genuinely aimed at procuring favorable government action"[11] at all. Furthermore, the present dispute is a purely private dispute which does not implicate public law issues under the Petition Clause and that the target is not objectively seeking any government action whatsoever.

For these reasons, the Defendant's anti-SLAPP claim should be denied.

---

[11] Causes of Action 2d 317 (Originally published in 2003).

Respectfully submitted,

Personally signed:

*[signature: Joseph Grillo]*

_____
JOSEPH GRILLO, M.D., *pro se*
73 Primrose Hill Road
Barrington, Rhode Island 02806
(401) 406-0012
Jfgrillo1@gmail.com

Dated: November 3, 2020

12

## CERTIFICATE OF SERVICE

I hearby certify that on November 2, 2020, I served a copy of this Surreply- through email (Plaintiff's electronic filing privileges are pending) and by first class mail, postage prepaid, upon Defendant's counsel at the following address:

Attorney Samuel D. Zurier
55 Dorrance Street, Suite 400
Providence, Rhode Island 02903

      Personally signed:

_____
JOSEPH GRILLO, M.D., *pro se*